Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2017 08:12 AM CDT

State of Nebraska, appellee, v.
Latriesha L. Rogers, appellant.
___ N.W.2d ___

Filed July 21, 2017.    No. S-16-1114.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

5. **Search and Seizure: Evidence: Trial.** Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.

6. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Arrests.** The Nebraska Supreme Court has described three tiers of police-citizen encounters. A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through non-coercive questioning and does not involve any restraint of liberty of the citizen. Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection. A tier-two

police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning. A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention. Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

7. **Constitutional Law: Search and Seizure.** A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.

8. **Police Officers and Sheriffs: Search and Seizure.** In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.

9. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** An officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.

10. ____: ____: ____. An officer's request that an individual step out of a parked vehicle does not automatically transform a tier-one police-citizen encounter into a tier-two encounter. But, if the totality of the circumstances are such that a reasonable person would believe he or she was not free to ignore the request and stay in the vehicle, a seizure has occurred for Fourth Amendment purposes.

11. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.

12. **Investigative Stops: Police Officers and Sheriffs: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis.

13. **Sentences: Appeal and Error.** In reviewing a sentence imposed within the statutory limits, an appellate court considers whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any legal principles in determining the sentence to be imposed.

14. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience,

(4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

15. ____. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Christopher Eickholt for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Latriesha L. Rogers challenges the denial of her motion to suppress evidence seized during the detention and search of a vehicle in which she was a passenger. The critical issue is when the encounter reached the second-tier and what reasonable suspicion existed at that point. Rogers also alleges that she received an excessive sentence. Finding no merit in her arguments, we affirm.

## II. BACKGROUND

### 1. Police-Citizen Encounter

On August 5, 2015, a Lincoln police officer located a vehicle associated with an individual wanted on a federal indictment. The vehicle was parked on a residential street and had two occupants. A second vehicle was parked in front of the target vehicle with the engine running and three occupants. The officer parked her patrol vehicle in the middle of the

street and approached the second vehicle on foot to ensure the wanted individual was not inside and about to leave.

On approaching the vehicle, the officer noticed the front seat passenger reach under his seat and directed him to stop in case he had a weapon. The officer then spoke to the driver and explained that she was looking for a wanted individual. Within 20 to 30 seconds, three officers from the Lincoln Police Department and the Metro Area Fugitive Task Force arrived to assist the lead officer in identifying the occupants of the vehicle.

After a minute had passed, the officer realized that the wanted individual was not in the vehicle. However, she continued to attempt to identify the occupants of the vehicle, because she recognized the driver as a contact for several narcotics investigations and believed he was involved with the selling of narcotics. She also suspected the front seat passenger had hidden a weapon or contraband under the front seat while she walked up to the vehicle. She did not recognize that passenger or the one in the back seat, but the back seat passenger was later identified as Rogers.

While identifying the occupants of the vehicle, the officers had the three individuals exit the vehicle and the front seat passenger was arrested after determining there was a warrant for his arrest. After Rogers exited the vehicle, the lead officer looked through the windows and noticed a purse with a small plastic bag sticking out of it on the floor in the back seat. The officer recognized the bag as consistent with those used in narcotics sales and asked for consent to search the vehicle, but her request was denied. At this point, the officers called for a drug detection dog to conduct a sniff search around the vehicle.

The drug detection dog alerted on the driver's side of the vehicle, and the officers then conducted a search of the vehicle and its contents—including the purse on the floor of the back seat. The search of the purse yielded a pipe and the observed plastic bag which contained some residue. The pipe pretested

positive for amphetamines. After the pipe and purse were confirmed to belong to Rogers, she was arrested and charged with possession of a controlled substance.

## 2. Motion to Suppress

Rogers filed a motion to suppress evidence concerning the stop and search of the vehicle and the evidence seized as a result of the search. Following a hearing, the district court overruled the motion. The court concluded that the encounter was initially a first-tier encounter that escalated to a second-tier and eventually a third-tier encounter. And, it found that there was reasonable suspicion of illegal activity to justify the second-tier investigation based on the lead officer's past encounters with the driver of the vehicle, "the furtive movements of the front seat passenger, and the observation of the baggie in the purse in the rear passenger floor board."

The case proceeded to trial, where Rogers preserved her objection raised in the motion to suppress. After all the evidence was presented, the jury found Rogers guilty of the crime charged. The district court sentenced her to 20 months' to 5 years' imprisonment.

Rogers appealed, and we moved the case to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Rogers assigns, restated, that the district court erred in (1) overruling her motion to suppress the stop and search of a vehicle in which she was a passenger and the subsequent search and seizure of its contents and (2) imposing an excessive sentence.

## IV. STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[2]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[2] *State v. Milos*, 294 Neb. 375, 882 N.W.2d 696 (2016).

Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[3] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[4]

[3] We will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[5]

## V. ANALYSIS

### 1. SEIZURE

Rogers alleges that the district court erred when it overruled her motion to suppress evidence obtained as a result of her encounter with law enforcement officials on August 5, 2015. She argues that the initial encounter with the lead law enforcement officer amounted to a seizure when she was detained after the officer determined the wanted individual was not in the vehicle. And, she argues that the investigatory stop was not supported by reasonable suspicion.

[4,5] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[6] Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded.[7]

To analyze the legality of the search and seizure, we must first determine when the seizure occurred and then address whether the seizure was supported by reasonable suspicion.

---

[3] *Id.*

[4] *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015).

[5] *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017).

[6] *State v. Milos, supra* note 2.

[7] *Id.*

### (a) Classification of
### Police-Citizen Encounter

[6] We have described three tiers of police-citizen encounters.[8] A tier-one police-citizen encounter involves the voluntary cooperation of the citizen elicited through noncoercive questioning and does not involve any restraint of liberty of the citizen.[9] Because tier-one encounters do not rise to the level of a seizure, they are outside the realm of Fourth Amendment protection.[10] A tier-two police-citizen encounter involves a brief, nonintrusive detention during a frisk for weapons or preliminary questioning.[11] A tier-three police-citizen encounter constitutes an arrest, which involves a highly intrusive or lengthy search or detention.[12] Tier-two and tier-three police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.[13]

[7-9] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[14] In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled.[15] But an officer's merely questioning an individual in a public place,

---

[8] See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

[9] *State v. Milos, supra* note 2.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement.[16]

Without repeating all the facts recited above, it is clear that the police-citizen encounter began as a tier-one encounter and escalated to a tier-two encounter when Rogers and the other two passengers were directed to exit the vehicle. The district court did not account for the passengers exiting or being asked to exit the vehicle when it made its determination on the motion to suppress. Thus, on this point, we are not constrained by a specific finding of historical fact.

[10] An officer's request that an individual step out of a parked vehicle does not automatically transform a tier-one police-citizen encounter into a tier-two encounter.[17] But, if the totality of the circumstances are such that a reasonable person would believe he or she was not free to ignore the request and stay in the vehicle, a seizure has occurred for Fourth Amendment purposes.[18] The circumstances of the encounter demonstrate that the law enforcement officials made a significant show of authority before asking Rogers to exit the vehicle. The passengers were outnumbered and surrounded by law enforcement officials. And, Rogers was asked to exit the vehicle *after* one of the other passengers was arrested. These

---

[16] *Id.*

[17] *Id.*

[18] See *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009). See, also, *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Sharp v. U.S.*, 132 A.3d 161 (D.C. 2016); *Popple v. State*, 626 So. 2d 185 (Fla. 1993); *People v Freeman*, 413 Mich. 492, 320 N.W.2d 878 (1982); *State in Interest of A.P.*, 315 N.J. Super. 166, 716 A.2d 1211 (1998); *People v Harrison*, 57 N.Y.2d 470, 443 N.E.2d 447, 457 N.Y.S.2d 199 (1982); *Johnson v. State*, 658 S.W.2d 623 (Tex. Crim. App. 1983), *overruled on other grounds, Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997).

circumstances surrounding the request to exit the vehicle would have made a reasonable person believe that he or she was not free to stay in the vehicle. Consequently, for the request to exit the vehicle to be a lawful seizure, the officer needed to have reasonable suspicion of criminal activity.

(b) Reasonable Suspicion

Rogers alleges that the lead officer had no reasonable suspicion of illegal activity to justify the detention of the passengers of the vehicle after the lead officer determined the wanted individual was not in the vehicle. She argues that the detention was only supported by a "'hunch'" that the driver may be involved in illegal activity because he lived with individuals who were being investigated for the sale of narcotics.[19]

[11,12] Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.[20] Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis.[21]

In this case, the lead officer witnessed the front seat passenger reach underneath his seat, which suggested to her that he was possibly retrieving or hiding contraband or weapons.[22] The officer also recognized the driver as a known contact for narcotics, and the assisting officers provided narcotics intelligence regarding the front seat passenger. These facts combined with the close proximity of the vehicle to the target vehicle associated with a wanted individual were sufficient to

---

[19] Brief for appellant at 17.

[20] *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[21] *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

[22] See *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006) (determining that observing passenger reach under seat to stow something contributed to reasonable suspicion).

give rise to a reasonable suspicion that the occupants of the vehicle were involved in illegal drug activity.

After the lead officer observed the small plastic bag, similar to those used in narcotics sales, inside Rogers' purse, the officers had reasonable suspicion to further detain Rogers and the other passengers of the vehicle for a drug detection dog sniff. It is undisputed that the drug detection dog sniff was initiated and concluded within a reasonable time and that the officers had probable cause to search the vehicle after the dog alerted to the presence of drugs. Therefore, the district court did not err in overruling Rogers' motion to suppress.

## 2. Sentence

Rogers alleges that she received an excessive sentence, because the district court "failed to meaningfully consider the circumstances surrounding the offense, the nature of the offense, the age, mentality and history of [Rogers] and the circumstances relating to [Rogers'] life."[23] She argues that the district court made no specific factual findings to justify the sentence and should have explained the maximum sentence that "should be saved for the 'worst of the worst' offenders."[24] Because Rogers was convicted of a Class IV felony committed before August 30, 2015, she was subject to a sentence of up to 5 years' imprisonment, a $10,000 fine, or both.[25] Thus, her sentence of 20 months' to 5 years' imprisonment was within the statutory limits.

[13,14] In reviewing a sentence imposed within the statutory limits, an appellate court considers whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any legal principles in determining the sentence to be imposed.[26] When imposing a sentence, the

---

[23] Brief for appellant at 21.

[24] *Id*. at 23.

[25] Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014). See, also, § 28-105(8) (Reissue 2016) and Neb. Rev. Stat. § 28-116 (Reissue 2016).

[26] *State v. Loding, supra* note 5.

sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[27]

[15] There is no evidence that the district court failed to consider the appropriate factors in sentencing Rogers. And, the court was not required to make specific factual findings to justify the sentence imposed. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence.[28] Accordingly, we conclude that the court did not abuse its discretion in imposing Rogers' sentence.

## VI. CONCLUSION

We conclude that the officers' seizure of Rogers was supported by reasonable suspicion and that the district court did not err in overruling Rogers' motion to suppress. Because we also conclude that the sentence imposed did not constitute an abuse of discretion, we affirm the judgment of the district court.

Affirmed.

---

[27] *Id.*

[28] See, *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016); *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).