Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

State of Nebraska, appellee, v.
Jonathan J. Rivera, appellant.
___ N.W.2d ___

Filed September 15, 2017.   No. S-16-255.

1. **Constitutional Law: Search and Seizure: Motions to Suppress:
   Appeal and Error.** In reviewing a trial court's ruling on a motion to
   suppress based on a claimed violation of the Fourth Amendment, an
   appellate court applies a two-part standard of review. Regarding histori-
   cal facts, an appellate court reviews the trial court's findings for clear
   error, but whether those facts trigger or violate Fourth Amendment pro-
   tection is a question of law that an appellate court reviews independently
   of the trial court's determination.
2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.**
   When a motion to suppress is denied pretrial and again during trial on
   renewed objection, an appellate court considers all the evidence, both
   from trial and from the hearings on the motion to suppress.
3. **Constitutional Law: Search and Seizure.** The Fourth Amendment to
   the U.S. Constitution and article I, § 7, of the Nebraska Constitution
   guarantee against unreasonable searches and seizures.
4. ____: ____. For the protections of the Fourth Amendment to apply, a
   seizure must have occurred.
5. ____: ____. A seizure in the Fourth Amendment context occurs only if,
   in view of all the circumstances surrounding the incident, a reasonable
   person would have believed that he or she was not free to leave.
6. **Police Officers and Sheriffs: Search and Seizure.** A police officer may
   make a seizure by a show of authority and without the use of physi-
   cal force.
7. **Constitutional Law: Police Officers and Sheriffs: Search and
   Seizure.** There is no seizure without actual submission; otherwise, there
   is at most an attempted seizure, so far as the Fourth Amendment is con-
   cerned. Thus, a seizure requires either a police officer's application of
   physical force to a suspect or a suspect's submission to an officer's show
   of authority.

8. **Witnesses: Evidence: Appeal and Error.** In reviewing a trial court's factual findings for clear error, an appellate court does not pass on the credibility of witnesses or reweigh the evidence presented.

9. **Police Officers and Sheriffs: Search and Seizure: Intent.** A law enforcement officer's subjective intent is irrelevant for determining whether a seizure did in fact occur.

10. **Police Officers and Sheriffs: Search and Seizure: Motor Vehicles.** A seizure does not occur simply because a law enforcement officer approaches an individual who voluntarily stopped his or her vehicle.

11. **Judgments: Appeal and Error.** A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Riedmann and Bishop, Judges, on appeal thereto from the District Court for Lancaster County, Andrew R. Jacobsen, Judge, on appeal thereto from the County Court for Lancaster County, Thomas W. Fox, Judge. Judgment of Court of Appeals affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## INTRODUCTION

The county court overruled Jonathan J. Rivera's motion to suppress. In doing so, it applied the community caretaking exception to the Fourth Amendment.[1] On further review, we conclude that the initial police-citizen encounter did not amount to a seizure. Because the encounter began without a seizure, it was not necessary to invoke the community caretaking exception. We affirm the decision of the Nebraska Court of Appeals, albeit on different grounds.

---

[1] See *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007).

## BACKGROUND

### POLICE-CITIZEN ENCOUNTER

We first describe the scene of the encounter. At approximately 10:35 p.m. on May 24, 2014, two patrolling Nebraska Game and Parks Commission conservation officers came across two groups of people on opposite sides of a paved road. According to all of the testimony, the scene was very dark at the time. The road was within the Branched Oak Lake recreation area and had no lane markings but had grassy areas to each side.

Before Rivera arrived, the officers parked their marked patrol vehicle on the right side of the road and exited the vehicle to investigate. When one of the officers approached the groups, the other officer returned to the patrol vehicle to call dispatch.

While sitting inside the patrol vehicle, the officer noticed another vehicle, driven by Rivera, approach and stop behind the patrol vehicle. The vehicle then pulled off the road onto the grassy shoulder to the right of the patrol vehicle and advanced along the shoulder at a slow speed. According to both officers at the scene, if the vehicle had attempted to pass the patrol vehicle on the left, the vehicle would still have left the paved portion of the road.

Concerned because the vehicle was approaching the group on the side of the road, the officer exited and walked around the front of the patrol vehicle toward Rivera's vehicle. The officer was wearing a uniform and displaying a badge, and he had a firearm on his person, though he did not draw or display it. Rivera saw the officer and stopped his vehicle as its front end was even with that of the patrol vehicle. At this time, the group of people on the side of the road was 15 to 20 feet away.

The officer approached and informed Rivera that he would move the patrol vehicle if Rivera would wait a few minutes. During this interaction, the officer noticed that Rivera had bloodshot, watery eyes and slurred speech. When asked

whether he had been drinking alcohol that evening, Rivera replied that he had. The officer then detained Rivera for a driving under the influence investigation which ultimately led to Rivera's arrest.

## Motion to Suppress

Before trial on his charge for driving under the influence, Rivera filed a motion to suppress evidence obtained as a result of the stop. The county court overruled the motion after finding that the arresting officer was operating in a community caretaking function when he made contact with Rivera. It later overruled Rivera's renewed motion to suppress at a bench trial and found Rivera guilty of driving under the influence. The county court revoked Rivera's driver's license for 18 months, imposed a $1,000 fine, sentenced him to 30 days' imprisonment and 24 months' probation, and ordered that he perform 20 hours of community service and pay all associated costs and fees.

## Appellate History

Rivera appealed to the district court and alleged that the county court erred in overruling his motion to suppress by concluding the arresting officer had reasonable grounds to detain him. The district court affirmed the judgment of the county court after concluding that it did not err in determining that the community caretaking exception applied to the police-citizen encounter.

On further appeal to the Court of Appeals, Rivera advanced the same argument and assigned that the district court erred in affirming the denial of his motion to suppress. In a split decision, the Court of Appeals affirmed the district court's ruling.[2]

We granted Rivera's petition for further review to address a perceived expansion of the community caretaking exception.

---

[2] *State v. Rivera*, No. A-16-255, 2017 WL 977345 (Neb. App. Mar. 14, 2017) (selected for posting to court website).

## ASSIGNMENT OF ERROR

Rivera assigns that the Court of Appeals erred by applying the community caretaking exception to the Fourth Amendment in affirming the county court's order overruling his motion to suppress.

## STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[3] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[4] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[5]

## ANALYSIS

Rivera asserts that the Court of Appeals erred by finding the community caretaking exception applicable to the police-citizen encounter in question. He argues in his petition for further review that in doing so, the Court of Appeals "broadly expanded the community caretaking exception to unprecedented levels in direct contradiction to [the Nebraska Supreme] Court's explicit mandate that the community caretaking exception be narrowly and carefully applied in order to prevent its abuse."[6]

[3,4] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against

---

[3] *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

[4] *Id.*

[5] *Id.*

[6] Citing *State v. Bakewell, supra* note 1.

unreasonable searches and seizures.[7] But, for the protections of the Fourth Amendment to apply, a seizure must have occurred.[8] Therefore, we must first review the factual findings of the trial court for clear error and determine whether a seizure within the meaning of the Fourth Amendment actually occurred.

[5-7] A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.[9] A police officer may make a seizure by a show of authority and without the use of physical force.[10] However, there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.[11] Thus, a seizure requires either a police officer's application of physical force to a suspect or a suspect's submission to an officer's show of authority.[12]

It is apparent from the record that Rivera voluntarily stopped after seeing the uniformed officer approach the front of his vehicle. Regarding Rivera's stop, the trial court found:

> To ensure the safety of the group of people near the front of the patrol pickup, [the officer] then got out of his patrol pickup, walked around the front of the patrol pickup to the passenger front side, and toward [Rivera's] truck that was attempting to pass.
>
> [Rivera's] truck, which was attempting to pass on the passenger side of the patrol pickup, then stopped. [The officer] did not step out in front of [Rivera's] truck as it was attempting to pass.

---

[7] *State v. Rogers, supra* note 3.

[8] See *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

[9] *State v. Rogers, supra* note 3.

[10] *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

[11] *Id.*

[12] *Id.*

. . . At no time did [the officer] activate the emergency overhead lights or siren on the patrol pickup, nor did [the officer] honk the horn of the patrol pickup to get [Rivera] to stop his truck. [The officer] did not draw or display his gun. [Rivera's] truck was not blocked in by the patrol pickup and was able to keep driving forward if it avoided the people in the area.

[8] There was conflicting testimony as to whether the police officer raised his hand to indicate Rivera should stop. But the trial court did not make a specific finding as to whether the officer made such a gesture. Instead, its detailed account of the encounter suggests that the court implicitly found the officer did not make any gesture to direct Rivera to stop. At oral argument, Rivera asserted that the sentence in the court's analysis stating the officer "was operating in a community caretaking function when he made . . . contact with [Rivera] and caus[ed] [Rivera] to stop his truck" was a specific finding that Rivera was in fact stopped. To the contrary, we view that sentence as a conclusion of law, not as a finding of historical fact. In reviewing the county court's findings, we do not pass on the credibility of witnesses or reweigh the evidence presented.[13] There was no clear error in the county court's findings of historical fact.

[9,10] Though the officer admittedly intended to stop Rivera's vehicle, his subjective intent is irrelevant for determining whether a seizure did in fact occur.[14] The officer did not gesture at Rivera to stop or otherwise restrict his movement by blocking his vehicle. Therefore, we cannot say that a reasonable person would have believed that he or she was not free to leave. And, Rivera voluntarily stopped his vehicle; a seizure did not occur simply because the officer approached him and told him he would move his patrol vehicle in a

[13] See *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015).

[14] See *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

few minutes.[15] The interaction between the officer and Rivera began as a "first-tier" encounter.[16]

Based on the officer's observations of Rivera's bloodshot, watery eyes and slurred speech, the "first-tier" encounter promptly escalated to "second-tier."[17] The circumstances then clearly established reasonable suspicion that a crime was being committed. Accordingly, the detention that followed was constitutionally permitted.

[11] Because there was no seizure at the commencement of the encounter, there was no need to apply the community caretaking exception. We reiterate that the exception is to be "narrowly and carefully applied."[18] A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.[19] Although the county court unnecessarily resorted to the community caretaking exception, it correctly denied Rivera's motion to suppress. Likewise, the district court and Court of Appeals were correct in affirming the decision of the trial court, despite having followed it down the wrong path.

## CONCLUSION

Because no seizure occurred at the commencement of the encounter, it was not necessary to resort to the community caretaking exception. Although the lower courts began down the wrong path, they reached the correct result. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

---

[15] See, e.g., *State v. Hedgcock, supra* note 10.

[16] See *State v. Rogers, supra* note 3, 297 Neb. at 269, 899 N.W.2d at 631.

[17] See *id.*

[18] *State v. Bakewell, supra* note 1, 273 Neb. at 377, 730 N.W.2d at 338.

[19] *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016).