IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. MCDANIEL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DAVID J. MCDANIEL, APPELLANT.


Filed October 23, 2018.    No. A-17-1327.


Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed.

Gregory C. Damman, of Blevens & Damman, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

David J. McDaniel appeals his convictions of possession of more than 1 pound of marijuana and possession of tetrahydrocannabinol (THC), both Class IV felonies. On appeal, he contends that the district court erred in overruling his motion to suppress physical evidence obtained following a traffic stop. We find no merit to his alleged error and therefore affirm.

### STATEMENT OF FACTS

During the afternoon of September 8, 2016, Seward County Sheriff's Deputy Chris Bigsby was on routine patrol on Interstate 80 in Seward County, Nebraska. Bigsby observed a white car with Missouri license plates following too closely behind a yellow Penske truck. Specifically, Bigsby testified that the white car was traveling a little more than a car length behind the truck. Bigsby activated his in-car camera and traveled to catch up to the two vehicles. Bigsby shared his

observations with Sergeant Michael Vance. Vance subsequently observed the Penske truck change lanes without properly signaling.

While Bigsby conducted a traffic stop of the white car, Vance continued to follow the Penske truck and again observed the truck change lanes without signaling until the truck had crossed the centerline. After this second lane change violation, Vance activated his lights and stopped the Penske truck. The camera on Vance's patrol car captured this second lane change violation, but the video was lost after Vance reviewed it with a deputy county attorney. The video had been put on a DVD but when McDaniel requested it during discovery, the DVD could not be located. Efforts to locate the DVD included searching every file in Vance's office, searching the sheriff's records department, making a request through the camera company, and running a search on his camera and every computer that might have been used to make the DVD. Despite these efforts, neither the DVD nor its contents were located. After the video was lost, the sheriff's department implemented a written policy to ensure that videos going to the county attorney's office were tracked.

After stopping the truck, Vance contacted the driver, McDaniel, who was the truck's sole occupant. Vance observed McDaniel to be nervous, even after he was told he would receive only a warning for the lane change violation. McDaniel provided a rental agreement which showed the truck had been rented in Olathe, Kansas, on September 6 and was due back September 7, 2016.

Vance asked McDaniel to sit in his patrol car while he prepared the warning for the lane change violation. Once seated in the patrol car, Vance detected the odor of marijuana on McDaniel. While Vance waited for dispatch to verify McDaniel's license status and check for warrants, he engaged McDaniel in conversation. McDaniel told Vance that he was traveling from Cheyenne, Wyoming. When Vance asked McDaniel if the white car was with him, McDaniel denied it. At approximately 16:04 hours, Bigsby could be overheard on the police radio stating he believed the three individuals in the white car were most likely traveling together with the Penske truck. McDaniel stated without prompting or questioning, "I'm not with them." At 16:05 hours, McDaniel asked if he was free to go, and Vance told him he was not because he was still waiting to hear whether McDaniel's license was valid. At 16:06 hours, Bigsby told Sergeant Vance that one of the individuals he contacted was Darren McDaniel. Sergeant Vance asked McDaniel if Darren McDaniel was his brother, and McDaniel said he was not.

At 16:07 hours, Vance learned that McDaniel's license was valid but that he had a positive 1040, meaning a positive record for drugs. Vance gave McDaniel the paperwork for the traffic warning and asked if he could ask some further questions. McDaniel said "no" and started to get out of the vehicle. Vance told McDaniel he was being detained based on reasonable suspicion at which point McDaniel became agitated. Upon questioning, McDaniel denied having any weapons in the truck and said that he had $1,000 in his backpack. When Vance asked McDaniel if he could search the truck, McDaniel denied consent. At 16:09 hours, Vance, a certified canine handler, felt he had reasonable suspicion to run his Certified Narcotic Odor Detection Dog around the truck. The dog alerted for drugs on the rear left corner of the truck. Officers searched the truck and discovered marijuana and THC in the form of hash oil or hash wax.

McDaniel moved to suppress evidence from the traffic stop claiming that he was unlawfully stopped and then unlawfully detained after the stop should have ended. After the

suppression hearing, the district court denied McDaniel's motion to suppress. Although the district court summarized the evidence which supported his determination, we note that the district court did not include any findings regarding the loss of Vance's dashcam video in the "FACTS" portion of its order; however, in the "ANALYSIS" portion of its order, the court found that Bigsby's in-car video "shows the yellow truck making a lane change without making the proper signal." Further, the court rejected McDaniel's argument that the evidence should be suppressed due to the loss of Vance's in-car video because the first lane change violation would not have been recorded on that video and McDaniel could not establish prejudice from the video's loss.

After McDaniel's motion to suppress was denied, a bench trial was held in October 2017, where both sides stipulated to facts which were materially similar to those described above. McDaniel objected only in order to preserve his right to appeal on the grounds of the motion to suppress. McDaniel was convicted of being in possession of marijuana (more than 1 pound) and being in possession of THC and was subsequently sentenced to 3 years' probation. He timely appeals and is represented by the same counsel on appeal that represented him in the district court.

## ASSIGNMENTS OF ERROR

McDaniel contends that the trial court erred in overruling his motion to suppress. Specifically, he contends that the court erred in finding that his vehicle was stopped lawfully. He further contends that the court erred in finding that he was not unlawfully detained.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Rivera*, 297 Neb. 709, 901 N.W.2d 272 (2017). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Rivera, supra*. When reviewing factual findings on motions to suppress, we do not resolve conflicts in the evidence or reweigh evidence, but do take into consideration that the trial court observed witnesses. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001).

## ANALYSIS

### PROBABLE CAUSE FOR TRAFFIC STOP

McDaniel contends that the stop of his vehicle was not reasonable because there was no probable cause that he committed a traffic violation. Specifically, he argues that Bigsby's video is not of sufficient quality to determine if he used his turn signal for the first violation and that spoliation doctrine allows us to infer the lost video was unfavorable to the State. We disagree.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation, no matter how minor, has occurred." *State v. Thalken*, 299 Neb. 857, 864, 911 N.W.2d 562, 569 (2018).

Vance testified that he observed two lane changes where McDaniel did not signal in violation of Neb. Rev. Stat. § 60-6,161 (Reissue 2010). After reviewing the evidence, the district

court explicitly concluded that McDaniel did not signal the first of these two lane changes. We do not second-guess the trial court's resolution of the factual dispute about the manner in which McDaniel was driving. There is ample evidence from Vance's testimony which supports that Vance had probable cause to stop McDaniel's truck because of the first lane change violation. Additionally, the district court reviewed Bigsby's in-car video and determined that it "show[ed] the yellow truck making a lane change without making the proper signal." The court's factual determinations were not clearly erroneous and McDaniel's traffic violation, no matter how minor, provided probable cause for the traffic stop.

Having determined the first traffic violation provided probable cause for the stop of McDaniel's truck, the second alleged lane change violation becomes irrelevant. Further, because the spoliation argument was only against the second violation, it is not necessary for this court to consider this argument to resolve this appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). Based upon the aforementioned reasons, this assigned error is without merit.

REASONABLE SUSPICION TO DETAIN MCDANIEL

McDaniel also assigns that the district court erred in finding that Vance had reasonable suspicion to detain him. First, he claims that the traffic stop should have concluded when Vance returned McDaniel's driver's license to him at 16:01 hours but Vance took longer than was reasonably necessary to complete the traffic stop. Second, he claims that Vance did not have reasonable suspicion to continue to detain him after the purpose of the traffic stop had been completed.

In *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018), Khalil claimed his traffic stop was changed into an illegal seizure. Khalil argued that questions unrelated to his traffic warning impermissibly expanded the scope of the traffic stop. *Id*. This court held that, when conducting a valid traffic stop, officers may ask for a driver's license and vehicle registration, request the driver sit in the patrol car, and inquire about the purpose of the travel. *Id*. Officers in this situation can also run computer checks on the vehicle and on each occupant of the car. *Id*. An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. *Id*. (citing *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)). We found in *Khalil* that a 10-minute traffic stop for issuing a warning did not measurably extend the duration of the stop and was therefore permissible. *Id*.

We first address McDaniel's claim that Vance took longer than necessary to complete the traffic stop. We agree that the traffic stop extended beyond the time that Vance returned McDaniel's driver's license to him while Vance waited for a response from dispatch concerning his inquiries. We disagree that this constituted an extension of the stop. Although Vance could not detain McDaniel longer than the time reasonably necessary to conduct a valid traffic stop, McDaniel cannot point to evidence that clearly shows that the traffic stop was extended. We do not find the length of the traffic stop or inquiries made during the stop justify a finding that McDaniel was detained longer than reasonably necessary or exceeded the bounds of a routine

investigation incident to a traffic stop. As the district court noted, the traffic stop concluded almost immediately after dispatch informed Vance that McDaniel's license was valid. Therefore, this claim is without merit.

Next, McDaniel argues that Vance did not have reasonable suspicion to continue to detain him after the purpose of the traffic stop had been completed. To detain a motorist for further investigation past the time reasonably necessary to conduct a routine investigation incident to a traffic stop, an officer must have a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation. *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014).

The district found that Vance had a reasonable suspicion to further detain McDaniel after the purpose of the stop had been concluded. At the time that the traffic stop concluded, Vance knew that McDaniel was nervous even though he had been informed he was getting a warning, Vance smelled marijuana on McDaniel's clothes, and he learned that McDaniel had "a positive 1040, meaning a positive record for drugs." The rental truck had been rented in Kansas on September 6, 2016, and was due back on September 7, but McDaniel stated he was returning from Wyoming. Vance had further learned that, although McDaniel denied travelling with the white car, a "Darren McDaniel" was travelling in the white car. Darren McDaniel and McDaniel both had Kansas City addresses. McDaniel also asked to leave prior to the completion of the stop. These facts, as determined by the district court, provided a sufficient factual basis to support a finding that Vance had reasonable suspicion to believe McDaniel was involved in illegal activity unrelated to the traffic violation. See *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014); *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981); *State v. Ruzicka*, 202 Neb. 257, 274 N.W.2d 873 (1979); *State v. Daly*, 202 Neb. 217, 274 N.W.2d 557 (1979). Because Vance had reasonable suspicion to further investigate McDaniel, the district court did not err in refusing to suppress the evidence found as part of Vance's lawful search.

## CONCLUSION

In sum, we find that the district court did not err in denying the motion to suppress. Sergeant Vance had probable cause to stop him and reasonable suspicion to further detain him for further investigation.

AFFIRMED.