IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. COLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CEDRICK D. COLE, APPELLANT.

Filed September 13, 2022.    No. A-21-1020.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial in Lancaster County District Court, Cedrick D. Cole was convicted of first degree arson and sentenced to 25 to 40 years' imprisonment. Cole appeals his conviction and sentence, claiming there was insufficient evidence to support his conviction, his sentence was excessive, and he received ineffective assistance of trial counsel. We affirm.

## II. BACKGROUND

On Saturday, October 10, 2020, Cole was with his then-girlfriend Jordan Ragland at her apartment in Lincoln, Nebraska, and they argued about Cole's alleged infidelity. Following their argument, Ragland asked her friend, Ashley Rice, to pick her up from the apartment and help her move her belongings to her mother's house. Rice arrived to pick up Ragland in the early afternoon. Following Ragland's departure, Cole made numerous calls to Ragland, most of which she ignored.

Approximately 10 minutes after she left the apartment, Ragland received a Snapchat video from Cole showing her couch on fire. In a video recording of Ragland opening and viewing the Snapchat video, Ragland can be heard saying "Oh my god." Rice then asked Ragland, "He actually set it on fire?" Ragland responded "[y]es." After viewing the Snapchat video, Rice and Ragland began heading back to the apartment. Cole testified that he had called Ragland numerous times to alert her that her couch had caught fire, but to no avail. He explained that this was the reason he sent Ragland a Snapchat video of the burning couch.

Cole claimed he attempted to subdue the fire by dousing the flames with flour and water. Ragland's neighbor, Shelby Marshall, assisted by running jugs of water over from her apartment to throw at the fire. Despite these efforts, the flames became uncontrollable and spread beyond the couch to the rest of the apartment unit. According to Marshall, she was "more active in trying to put the fire out" than Cole. She further stated that Cole seemed "lethargic." According to Cole, he had suffered a previous injury to his leg, which limited his mobility. Cole called 911 to request emergency assistance. However, Marshall stated that Cole did not call 911 until she instructed him to do so. Lincoln Fire and Rescue arrived shortly thereafter and successfully suppressed the fire.

Cole left the scene of the fire prior to the arrival of emergency personnel because he was aware of outstanding warrants for his arrest. After leaving Ragland's apartment, Cole asked Rice and Ragland to pick him up. Rice dropped off Ragland and Cole at a friend's house a few blocks away from the apartment. Cole remained at the friend's house while Ragland walked to the scene of the fire and spoke with law enforcement.

On January 28, 2021, the State filed an information charging Cole with first degree arson, a Class II felony. A jury trial was held in October. Evidence related to the events occurring on October 10, 2020, was presented through witness testimony, photographs, voice recordings, and video recordings. In addition to the previously described evidence, we will set forth further evidence as necessary to address the issues on appeal.

Surveillance footage from a neighboring building on October 10, 2020, showed Cole pick up an item off the ground near a charcoal grill outside of Ragland's apartment unit. Rice testified that Ragland and Cole had previously stored lighter fluid next to the grill and that the item Cole picked up from near the grill "would have to [have been] lighter fluid." Ragland and Cole testified that they stored the lighter fluid in the garage. Cole testified that surveillance footage showed him picking up a water bottle which only contained water. Fire Marshal Thomas Schmidt, who was qualified as an expert fire inspector at trial, stated that he did not find any remnants of a lighter fluid bottle in the apartment or near the grill.

Ragland testified that she frequently filled a torch with butane while sitting on the couch in her apartment, sometimes spraying excess butane onto the couch. She further stated that she habitually lit incense, which she described as "almost like . . . a punk for fireworks," and she placed them between couch cushions, among various other locations throughout her apartment. She surmised that a previous fire that had started on the same couch was ignited by her incense; the previous fire took place in September 2020. She noted that at that time firefighters had advised her to dispose of the burned couch cushions because they were "more flammable" due to the release of certain oils in the microfibers of the couch. She stated that she was "sure" she placed incense in the couch on the day of the October 10th fire.

After deliberation, the jury found Cole guilty of first degree arson and the district court entered judgement on the verdict. At a sentencing hearing held on November 23, 2021, the court sentenced Cole to 25 to 40 years' imprisonment with 143 days' credit for time served. A written sentencing order was entered that same day.

Cole appeals.

## III. ASSIGNMENTS OF ERROR

Cole claims, restated, that (1) the evidence was insufficient to sustain his conviction, (2) his trial counsel was ineffective in that counsel failed to challenge the lack of evidence regarding a material element of the crime, and (3) his sentence was excessive.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Cole claims that the evidence adduced at trial was insufficient to sustain his conviction for first degree arson.

Neb. Rev. Stat. § 28-502(1) (Reissue 2016) provides that

[a] person commits arson in the first degree if he or she intentionally damages a building or property contained within a building by starting a fire or causing an explosion when another person is present in the building at the time and either (a) the actor knows that fact, or (b) the circumstances are such as to render the presence of a person therein a reasonable probability.

It is undisputed that at least one other person was physically present in the apartment building at the time of the fire on October 10, 2020. Thus, the remaining question is whether a rational fact finder could have determined that (1) Cole intentionally started the fire and (2) either

he knew that another person was in the building, or the circumstances were such that the presence of another in the building was a reasonable probability.

Cole argues that no rational trier of fact could have found that he intentionally started the fire because there was ample evidence presented at trial that the fire was accidentally started by a combination of the increased flammability of the couch resulting from the September 2020 fire, the excess butane that had dripped onto the couch, and Ragland's haphazard use of incense. Cole further argues that the prosecution introduced no evidence at trial to demonstrate that Cole knew of the fact that there was another person in the building at the time of the fire or there were circumstances making it probable that another person was in the building.

### (a) Intentional Starting of Fire

Fire Marshal Schmidt testified that he employed a systematic fire investigation approach to determine that the fire originated on the couch in the living room and that the fire "had to [have been] ignited by human hands." It was also demonstrated that Cole was the only person in Ragland's apartment at the time the fire started. Moreover, Rice, Ragland, and Cole testified that the morning of the fire, Ragland and Cole had been arguing about Cole's alleged infidelity. Following this disagreement, Cole had been "blowing up" Ragland's phone but did not receive many responses from her. Then, approximately 10 minutes after she left the apartment, Ragland received a Snapchat video from Cole showing her couch on fire. Additionally, surveillance footage from a neighboring building showed Cole pick up what Rice stated "would have to [have been] lighter fluid" from next to the grill and bring it inside the apartment. Taken together, a rational fact finder could have concluded from this evidence that Cole intentionally started the fire.

Cole argues that a rational jury could not have come to this conclusion given the ample witness testimony regarding the increased flammability of the couch resulting from a previous fire, the excess butane that had sprayed onto the couch when Ragland refilled her torch, and Ragland's habit of "sticking" burning incense into the couch cushions. While we make note of this evidence, it is not the role of this court to reweigh the evidence or otherwise make determinations regarding witness credibility. See *State v. Figures, supra.* It is the role of the fact finder to make such determinations, and in this case the jury, as fact finder, subscribed to the version of events presented by the State.

### (b) Knowledge or Reasonable Probability of Presence of Another

Cole points out that the State did not elicit from him testimony that he was actually aware that another person was in the building. While this is true, the State was not required to produce such evidence so long as it proved that there were circumstances making it reasonably probable that another person was in the building at the time of the fire. The State's evidence included Marshall's testimony that there were five units in the apartment building and the fact that the fire took place on a Saturday afternoon--a time where it is more likely that occupants of other units would be home. A rational jury could have relied upon this evidence to determine that the circumstances were such as to render the presence of a person within the building a reasonable probability.

Viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to support the jury's finding that Cole was guilty of first degree arson.

## 2. Ineffective Assistance of Counsel

Cole has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide deficient performance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.* The record on direct appeal is sufficient to review a claim of ineffective assistance of trial counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Cole claims he was denied the effective assistance of counsel when trial counsel "failed to challenge the lack of evidence concerning a material element of the offense." Brief for appellant at 18. He contends that trial counsel failed to elicit testimony demonstrating that Cole lacked actual knowledge that a person was in the building. Additionally, during closing arguments, trial counsel stated, "I would agree with the State that this all comes down to really one question. Did Mr. Cole start this fire?" Cole argues, "This is an inaccurate conclusionary statement that would have been treated by the jury as a concession of facts on material elements of the offense, elements not otherwise proven[.]" Brief for appellant at 18.

Even if trial counsel's framing of the case during his closing argument and failure to draw attention to the lack of evidence adduced regarding Cole's actual knowledge of others in the building constituted deficient performance, Cole cannot show that he was prejudiced by these claimed deficiencies. There was evidence presented indicating that Cole intentionally started the fire, another individual was actually in the building at the time of the fire, and the circumstances were such as to render the presence of a person within the building a reasonable probability. Such findings are sufficient to support a conviction of first degree arson without a finding of actual knowledge on Cole's part. Thus, even if trial counsel's performance had been deficient in the manner Cole describes, sufficient evidence was presented at trial such that a rational jury could have come to the same conclusion. Because Cole cannot show prejudice, this claim fails.

## 3. Excessive Sentence

Cole claims the district court imposed an excessive sentence. Cole was convicted of first degree arson, a Class II felony, pursuant to § 28-502(1). A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2020). The district court

sentenced Cole to 25 to 40 years' imprisonment, which is within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Cole was 34 years old at the time of sentencing. According to the presentence investigation report (PSR), Cole was unmarried but had a long-term girlfriend (not Ragland) who he had been seeing periodically since 2013. Cole had six children from previous relationships and owed $15,109.95 in back child support. He graduated high school and completed some college courses. Prior to his incarceration, he worked as a full-time server at a restaurant.

Cole's criminal history includes convictions for the following: "Resist Arrest" and "Possess Depressant/Stimulants/Hallucinogenic/Steroids" in 2006 (9 days' jail, 12 months' probation, and $1,600 fine); "Obstruct Legal Process" in 2007 (5 days' jail, $1,100 fine, and 12 months' probation); "Robbery" in 2008 (8 to 10 years' imprisonment and $4,450.50 restitution); "Robbery" in 2008 (10 to 18 years' imprisonment); "Possess Opiates/Opium/Narcotic Drug and Certain Stimulates" [sic] in 2009 (41 months' imprisonment and 24 months' post-release supervision); "Domestic Assault-3rd Degree" in 2016 (6 months' jail); "Forgery-2nd Degree/$500-$1,500" in 2019 (30 days' jail); and "Theft by Unlawful Taking $1,500-$5,000" in 2019 (90 days' jail, 3 years' probation, and $375.24 restitution; 20 days' jail probation sanction). Cole also had convictions for multiple traffic offenses.

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation. Cole was assessed as a "[v]ery [h]igh" risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domains for companions and procriminal attitude. He scored in the "[h]igh" risk range in the domains for criminal history, leisure/recreation, and alcohol/drug problems. He scored in the "[m]edium" risk range in the domains for education/employment, family/marital, and antisocial patterns.

At the sentencing hearing, Cole's trial counsel acknowledged that "there was extensive property damage" from the fire but emphasized that "nobody was injured." Counsel stated that Cole accepted the jury's verdict but that he maintained his innocence. Counsel asked the district court to consider Cole's "extensive drug problem," which counsel alleged contributed to Cole's actions on the day of the fire. Counsel requested that the court impose "a sentence that's appropriate but toward the lower end of the sentencing range."

Cole informed the district court that he had recently grown and come to prioritize his relationship with his six children. He explained that he came from a rural background but that once he "got in the city life," he made mistakes, some of which involved the use of drugs. He took responsibility for his mistakes but stated that they did not reflect who he was "as a person."

The district court stated that it had reviewed the PSR and considered the relevant sentencing factors in determining the appropriate sentence to impose. The court recounted Cole's "violent" criminal history, noting that Cole was on probation at the time the fire took place. The

court noted that the fire resulted in "an extreme amount of damage to the building" and, although there was no loss of life in this instance, "loss of life was a natural affect [sic]" of the offense. The court also stated that Cole had "taken no responsibility for the crime." The court found "that imprisonment . . . [was] necessary for the protection of the public" and "a lesser sentence would depreciate the seriousness of [the] crime and promote disrespect for the law." The court then sentenced Cole as previously set forth.

In his brief on appeal, Cole claims that the district court abused its discretion by failing to consider "the excessive hardship that a sentence of 25-40 years['] imprisonment would entail for those that depend on him." Brief for appellant at 19. Specifically, his children "depend on him for emotional and financial needs." *Id*. at 20. He argues "a year in jail and post release supervision" would have been a sufficient sentence and that "he would have benefited from therapy" and the "programs that come with supervision." *Id*.

Upon our review of the relevant sentencing factors in this case, we conclude that while the sentence imposed was severe, we cannot say the district court abused its discretion. The district court appropriately considered the seriousness of Cole's offense and his individual circumstances. Although we recognize the hardship a long sentence may have on Cole's dependents, especially when considering the preexisting hardship caused by Cole's $15,109.95 in unpaid back child support owed for their benefit, our review of a sentencing order is limited to an abuse of discretion standard. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). Accordingly, we cannot say the sentence imposed here was an abuse of discretion.

## VI. CONCLUSION

For the reasons set forth above, we affirm Cole's conviction and the sentence imposed by the district court. We also conclude that Cole's ineffective assistance of trial counsel claim fails.

AFFIRMED.