IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GOZO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MENSAH F. GOZO, APPELLANT.

Filed October 3, 2023.    No. A-23-219.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Kristi Egger, Lancaster County Public Defender, and Amanda R. Baskin for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Mensah F. Gozo pled no contest to one count of first degree sexual assault and one count of child enticement. The Lancaster County District Court sentenced him to consecutive sentences of 40 to 50 years' imprisonment for the sexual assault conviction, and 3 to 3 years' imprisonment for the child enticement conviction. Gozo contends that the sentences imposed were excessive. He also claims that he received ineffective assistance of trial counsel when his counsel failed to properly advise him of his right to move to suppress statements and evidence taken from him in violation of his constitutional rights and failed to bring mitigating evidence to the court's attention at sentencing. We affirm.

## II. BACKGROUND

On July 26, 2022, the State filed a complaint in the county court for Lancaster County charging Gozo with one count of first degree sexual assault of a child, a Class IB felony, pursuant

to Neb. Rev. Stat. § 28-319.01(2) (Reissue 2016), and one count of child enticement-first offense, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-311 (Reissue 2016). The complaint also alleged that the current offense was an aggravated offense under Neb. Rev. Stat. § 29-4001.01(1) (Reissue 2016) of the Sex Offender Registration Act, because it involved a victim under the age of 13 years.

After Gozo waived a preliminary hearing, his case was bound over to the district court for arraignment. On September 14, 2022, the State filed an information in the district court charging Gozo as previously described in the initial complaint. That same day, Gozo filed a "Written Arraignment and Waiver of Physical Appearance," in which he entered a plea of not guilty to the charges set forth in the information.

On January 30, 2023, the State filed an amended information maintaining the child enticement charge, but now charging Gozo with first degree sexual assault, a Class II felony, pursuant to Neb. Rev. Stat. § 28-319(1)(b) (Reissue 2016) (knew or should have known victim was mentally or physically incapable of resisting or appraising nature of her conduct), including that it was an aggravated offense. On February 2, Gozo entered a plea of no contest to both counts of the amended information; a written order confirming the plea was entered the same day. At the plea hearing, the State informed the court that, in exchange for the plea, the State agreed to amend the sexual assault charge to a Class II felony. The court confirmed with defense counsel and Gozo, through an interpreter, that this was their understanding of the agreement.

The State provided the following factual basis:

> On July 24, 2022, 12 year old female referred to as [victim's initials (hereafter "victim")] was reported as a missing juvenile from Lincoln, Nebraska. [Victim] is developmentally delayed to a 1st grade level. She also suffers from epileptic seizures. On that date she was returned home by the defendant. At that time she disclosed that the defendant had sexually assaulted her after picking her up from the side of the road. She stated he took her to his residence at [an address on] W Street and subjected to her [sic] penile vaginal penetration. He then drove her home to be reunited with family. The defendant was eventually contacted. He waived Miranda and admitted to picking [the victim] up from the area of 11th and Cornhusker. Took her back to his residence and had penile vaginal sex with [the victim] on his bed. He then provided her a change of clothing and returned her to her residence where he was contacted by law enforcement. All events in Lancaster County, Nebraska.

After advising Gozo of his constitutional rights and the consequences of entering a plea of no contest, the district court accepted Gozo's plea of no contest. The court ordered a "Presentence Investigation Report" (PSR) and informed Gozo that he would have the opportunity to participate in the presentence investigation and that the PSR was what the court would look at when deciding an appropriate sentence for him.

On March 2, 2023, the district court sentenced Gozo to 40 to 50 years' imprisonment for the sexual assault conviction and 3 to 3 years' imprisonment for the child enticement conviction, with the sentences running consecutively. Gozo received credit for 221 days already served. A corresponding file-stamped order was entered that same day.

### III. ASSIGNMENTS OF ERROR

Gozo assigns that (1) the district court abused its discretion by imposing excessive sentences, (2) his trial counsel was deficient for failing to properly advise him of his right to move to suppress statements and evidence taken from him by law enforcement in violation of his constitutional rights, and (3) his trial counsel was deficient for failing to bring mitigating evidence to the court's attention at sentencing.

### IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

### V. ANALYSIS

#### 1. Excessive Sentences

Gozo claims the district court abused its discretion when it imposed excessive sentences. Gozo was convicted of one count of first degree sexual assault, a Class II felony, which is punishable by a minimum of 1 year of imprisonment and up to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). For this conviction, the court sentenced Gozo to 40 to 50 years' imprisonment. Gozo was also convicted of child enticement-first offense, a Class IIIA felony, which is punishable by up to 3 years' imprisonment and 9 to 18 months of post-release supervision if imprisonment is imposed, or a $10,000 fine, or both. See *id.* However, when a sentence for a Class IIIA felony is imposed consecutively or concurrently with a sentence of imprisonment for a Class II felony, the court must impose an indeterminate sentence that does not include a period of post-release supervision. See Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016). For this conviction, the court sentenced Gozo to 3 to 3 years' imprisonment. Each of Gozo's sentences was within its respective statutory range. As such, we review the court's sentencing determination only for an abuse of discretion.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Gozo was 60 years old at the time of sentencing. His criminal history includes only traffic citations. According to information contained in the PSR, he was married and had four children, ranging in ages from 7 to 27. He did not complete high school or obtain a GED. Gozo was a "native

of West Africa" and immigrated to the United States in 2015. When interviewed by law enforcement, Gozo said he was from Togo, his primary language was Ewe, he spoke French, and he spoke "not good English." Law enforcement read Gozo his *Miranda* warnings in English, as well as a consent form to take DNA samples from Gozo. Law enforcement then collected DNA from Gozo and obtained a confession from him. Law enforcement then began using a French interpreter to communicate with Gozo and read him his *Miranda* warnings again, as well as consent forms to collect Gozo's DNA and search his phone, car, and home. During the interview, the interpreter stated to law enforcement that Gozo was speaking "very broken French."

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation. Gozo was assessed as a "Medium Low" risk to reoffend. The probation officer also administered the "Vermont Assessment of Sex Offender Risk-2" and the "Sex Offender Treatment Intervention and Progress Scale," for which Gozo scored in the low risk range.

The probation officer noted that Gozo "appeared to be engaging in some minimization regarding his role in the present offense by indicating the normalcy of young girls being sexually active in his culture, and by stating that the sex was consensual." The probation officer noted that Gozo showed a "lack of empathy for the victim." Gozo told the probation officer that he "'wasn't thinking straight'" when the incident happened, and that he regretted it. He expressed his understanding that he "'broke the law and that what he did was wrong.'" Gozo thought "'they were just two people having normal, consensual sex,'" and if he had known her age, he would not have had sex with her. He also said that if he thought he did something wrong at the time, he would not have taken her home afterwards. Gozo expressed concern that he had disappointed his children and his community. Ultimately, Gozo said that he was the "'only person to blame for the offense.'"

The PSR also contained numerous reports authored by law enforcement. Of note, law enforcement reported finding photographs of the victim "in bed with Gozo" with "[n]o shirt," and that the photo depicted her "breast area." Additionally, a report of a registered nurse who conducted a forensic examination of the victim contained the victim's account of what took place. The victim informed the nurse that she "lied to [Gozo]" when she "told him [she] wouldn't tell anyone but [she] did. [She] told [her] mom." The victim further stated that Gozo "took off [her] bra + pants for no reason" and that he "was trying to get [her] pregnant."

The victim's impact statement indicated that she was scared of Gozo, and she requested that the district court "[s]end [him] to jail." The victim's mother stated that after Gozo sexually assaulted her daughter, he "brought [her] home [with] gifts[,] acting as if he was a [h]ero." She noted that her daughter had bruising and had contracted an "STD." Her medical treatment included a rape kit, medications to treat the STD, and several therapy sessions. The victim's mother requested that the court impose the maximum sentence possible and "maybe loss of naturalization."

At the sentencing hearing, the State pointed out that Gozo "took the innocence" of the victim when he picked her up, took her to his home, subjected her to penetrative sex, and took photos of her in his bed. The State argued that the question before the district court was "whether or not . . . Gozo [could] ever be trusted to return to society and not perpetrate on other children." The State informed the court that its position on this question was "a resounding no." The State also noted that, although "Gozo tried to take responsibility for his actions" throughout the

presentence investigation, he "was not apologetic to the victim or her family." Instead, he focused on himself and that he had let his children down. He also "asked for leniency because, 'he really wants to find peace for himself[.']" The State informed the district court that the victim "suffers from increased night terrors," "[i]ncreased . . . seizure activity[,] and heightened emotional outbursts." It argued that the victim and her family deserved justice, and the "residents of Lancaster County deserve[d] to feel safe." The State urged the court to impose a "significant period of incarceration and [that] both counts . . . run consecutive[ly]."

Gozo's trial counsel informed the district court that he had submitted a letter to the court with his "thoughts and . . . comments." The letter corrected statements in the PSR, which indicated that Gozo was unemployed. The letter stated that Gozo was employed fulltime at a demolition company from 2015 until his arrest. From 2015 until the time of his arrest, Gozo increased his earnings from $10.00 to $18.00 per hour. The letter highlighted that Gozo had "made a life for him and his family in Lincoln," that he had "no criminal history, but for three traffic tickets," and that Gozo had "accept[ed] 100% responsibility." It further highlighted that the risk assessments the probation officer conducted showed that Gozo was at a low risk to reoffend. Finally, the letter indicated that if placed on probation, Gozo would abide by the terms of his probation. The letter included Gozo's request that if the court declined to place him on probation, he receive a "combined sentence of jail + lengthy probation" because "[p]robation would offer an incentive to [Gozo] . . . to stay employed, stay out of trouble[,] and to utilize probation programming to better himself." When given the opportunity for allocution at sentencing, Gozo stated through an interpreter that he was "sorry to the family."

The district court indicated it had considered all of the information and the PSR, as well as all of the factors it is required by law to consider. The court stated that "[t]his [was] a heinous crime" which "involved an innocent child." The court noted "the same things about [Gozo's] statement that [the State] . . . pointed out"--that Gozo did not say "anything in [his] statement about [the victim] or the lifetime impact [his] behavior [would] have upon her." The court found that the risk was substantial that Gozo would engage in additional criminal conduct. It noted that Gozo "saw a vulnerable child and [his] immediate response, was to victimize her." It found that Gozo's claim that he was unaware of the victim's age was not credible, considering he "took steps to cover up the crime and [he] told her not to tell." The court acknowledged Gozo's interest in probation, but concluded that, considering the nature and circumstances of the crime, and history, character, and condition of Gozo, imprisonment was necessary for the protection of the public. The court further found that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. It then sentenced Gozo as previously set forth.

In his brief on appeal, Gozo claims the district court abused its discretion when it "failed to adequately consider [Gozo's] cultural background." Brief for appellant at 16. He states that in Togo, his native country, "it is common not to know a person's age or ask for identification prior to engaging in sexual relationships, and in some cases, people may not even know their own age." *Id.* at 17. He notes that he was not aware of the victim's age or mentality, nor was he aware of the legal age of consent in the United States. He states that while he recognizes that ignorance of the law is no excuse and he takes responsibility for his actions, the cultural differences as well as the language barrier were "important mitigating factors that should have been adequately considered" by the court. *Id.*

Gozo further argues that the district court failed to appropriately weigh his "overwhelmingly law-abiding life prior to the current offense." *Id.* He contends that the court's determination that there was a substantial risk of additional criminal conduct was "unfounded." *Id.* at 18. He also claims the court failed to consider the facts and circumstances surrounding his life, such as his stable employment and family that depend on him. Finally, he argues the court failed to consider that he accepted responsibility for his actions.

We find no abuse of discretion by the district court in sentencing Gozo. The court appropriately considered the seriousness of Gozo's offense and his individual circumstances. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). To the extent Gozo argues that the court did not adequately consider certain mitigating factors, we note that it is evident that the court had before it all the information that Gozo suggests should have resulted in a lesser sentence. However, it was within the sentencing court's discretion to weigh more heavily the factors supporting a lengthier sentence, such as the seriousness of the offense and the lasting impact on the young victim and her family. We therefore cannot say the court abused its discretion in determining the sentence imposed.

### 2. Ineffective Assistance of Counsel

Gozo alleges two claims of ineffective assistance of trial counsel. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Gozo is represented by different counsel on direct appeal than his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Theisen, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra*. In a

plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement of an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

With these governing principles in mind, we turn now to address Gozo's ineffective assistance of trial counsel claims. We find the record is sufficient to address his claims.

(a) Failure to Advise

Gozo contends that his "trial counsel was deficient for failing to properly advise [him] of his right to move to suppress statements and evidence taken from him by law enforcement in violation of his constitutional rights." Brief for appellant at 19. He argues that law enforcement unconstitutionally questioned him because Gozo was "never provided with adequate interpretation in a language that he understood in order to effectuate a valid waiver of his constitutional right to remain silent and have counsel present with him prior to any questioning." *Id.* at 21.

Regardless of whether trial counsel may have been deficient in this regard, we find that Gozo cannot show that he was prejudiced by this alleged deficient performance because the district court specifically informed Gozo of this right and Gozo waived it. At the plea hearing, the following colloquy took place between the court and Gozo (through an interpreter).

THE COURT: If you made statements to law enforcement, you're entitled to a separate hearing to have me determine whether those statements were made freely, voluntarily, knowingly, and intelligently. If I were to find any one of those things missing, then those statements could not be used against you at trial. If I accept your plea, you are waiving your right to that type of separate hearing. Do you understand?

[Gozo]: Yes, I understand.

THE COURT: If law enforcement took any evidence from you, you're entitled to a separate hearing.

[Gozo]: I understand.

THE COURT: To determine whether the evidence was lawfully taken from you.

[Gozo]: I understand.

THE COURT: If I were to find the evidence was not lawfully taken from you, then that evidence could not be used against you at trial. If I accept your plea, you are waiving your right to that type of separate hearing. Do you understand?

[Gozo]: Yeah, I understand.

THE COURT: In explaining these rights, did I use any word or phrase you did not understand?

[Gozo]: When I'm explaining to him then everything's clear for him.

THE COURT: Do you wish to waive these rights?

[Gozo]: Yes, Your Honor. That's why I plead no contest.

As established by the exchange above, the district court informed Gozo that he had a right to have a hearing to determine whether any statements he made to law enforcement were "made

freely, voluntarily, knowingly, and intelligently" and whether the evidence against him was lawfully obtained by law enforcement. He was also informed that if the court found that law enforcement obtained statements or evidence unlawfully, the State would not be able to use such statements or evidence against Gozo at trial. Gozo confirmed to the court his understanding of this right. He also confirmed that he understood he would be waiving this right if he were to enter a plea of no contest and he then proceeded to specifically waive this right. Therefore, Gozo cannot show that he was prejudiced by trial counsel's alleged deficient performance and this claim of ineffective assistance of trial counsel fails.

(b) Failure to Present Mitigating Evidence at Sentencing

Gozo also claims that "[a]t sentencing, trial counsel failed to bring all of the relevant mitigating evidence to the court's attention regarding [Gozo's] background." Brief for appellant at 22.

He first argues that although trial counsel's letter highlighted some mitigating facts, it failed to "bring to light that [Gozo] spent 25 years of his life in a refugee camp." *Id*. at 23. He argues this information speaks to his cultural background, and that this information was particularly important, given the "facts of the present offense, the enormous cultural differences, and the significant language barrier at play." *Id*. We find that Gozo cannot show that he was prejudiced by trial counsel's alleged deficient performance. That Gozo was in a refugee camp and the noted cultural differences were included in the PSR, which the district court stated that it reviewed and considered in determining an appropriate sentence.

In further argument that trial counsel failed to present mitigating evidence to the district court's attention related to Gozo's background, Gozo argues that his trial counsel's performance was deficient because he "failed to advise [Gozo] of his ability to have family and members of the community submit character letters on his behalf for the court's review prior to sentencing." Brief for appellant at 23. He claims he has a strong relationship with his wife and four children, his employer, and his community. He suggests such letters would have "significantly impacted" the court's perception of him and of his "ability to live a law-abiding life outside of confinement." *Id*. He also argues that trial counsel was deficient when he "failed to adequately advise [Gozo] of his ability to make a statement to the [court] at the sentencing hearing," which led to Gozo making a "minimal" statement during the sentencing hearing, and "not a full representation of his thoughts on . . . his remorse, responsibility, and desire to do better moving forward." *Id*. He suggests that his "statements could have been better formulated" and would have helped mitigate "the sentencing outcome." *Id*.

On the record before us, we cannot determine whether trial counsel failed to advise Gozo of his ability to have character letters submitted on his behalf or whether trial counsel failed to adequately advise Gozo of his ability to make a statement to the court at the sentencing hearing. Regardless, we fail to see how such letters or a better formulated allocution would have made a difference in Gozo's decision to enter a plea or in the sentence imposed. The district court was able to read about Gozo's regrets in his personal statement, along with other information contained in the PSR addressing Gozo's long-term employment at a demolition company and his lack of criminal history, which are certainly characteristics that favor Gozo. Despite having that information, the court focused instead on this being a "heinous crime" that "involved an innocent

child" and that Gozo saw a vulnerable child and his immediate response was to "victimize her." The court also pointed out how Gozo took steps to "cover up the crime" and told the victim "not to tell." The court found Gozo not to be credible in his claim that he was unaware of the victim's age. Accordingly, we conclude that there is no reasonable probability that Gozo's sentence would have been different despite any alleged failure by defense counsel to ensure the submission of character letters or a better formulated allocution by Gozo. See *State v. Casares*, 291 Neb. 150, 159, 864 N.W.2d 667, 675 (2015) (claim that trial counsel was ineffective in failing to include evaluation to provide more detail about defendant's life to "humanize[]"defendant before court for sentencing purposes was without merit because there was "no reasonable probability that the sentence would have been different" given other information available to court).

Gozo's claim that trial counsel was ineffective for failing to bring all relevant mitigating evidence regarding Gozo's background to the court's attention fails.

## VI. CONCLUSION

For the reasons set forth above, we affirm Gozo's sentences, and we conclude that his claims of ineffective assistance of trial counsel fail.

AFFIRMED.